IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 17-00112-01-CR-W-BP |
| | ) | |
| MATIAS ISAAC RODRIGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Pending is Defendant's motion to suppress statements and evidence. (Docs. 32.)[1] On August 2, 2019, the Honorable Lajuana M. Counts, Magistrate Judge for this District, issued a Report recommending that "the portion of the motion seeking the suppression of a statement defendant made at the scene, which statement was made in response to questioning initiated by a law enforcement officer, be granted. The remainder of the motion should be denied." (Doc. 61, p. 1.)[2] The Government has "agree[d] not to solicit and use such statement in its case-in-chief at trial" and recommends the Court adopt the Report and Recommendation. (Doc. 63.) Defendant objects to the Report and Recommendation to the extent it recommends denying his motion. (Doc. 64.) On de novo review, the Court adopts Judge Counts' Report and Recommendation in its entirety. Thus, Defendant's motion to suppress the statement Defendant made at the scene is **GRANTED**. The remainder of the motion is **DENIED**.

---

[1] The Court has also considered the arguments in Defendant's supplemental brief in support of the motion to suppress, (Doc. 57), filed on April 5, 2019.
[2] All page numbers refer to the Court's CM/ECF system and may not match the document's original pagination.

# I. BACKGROUND

The Court adopts the Report in its entirety, including its recommended findings of fact. In summary, on March 9, 2017, Detective John Pickens of the Kansas City, Missouri Police Department was on duty at the Greyhound Bus Station in Kansas City, Missouri. (Doc. 61, p. 2.) Detectives Aaron Hendershot, Yale Acton, Brian Ruch, and Molly Mast were also on duty. (*Id.*) Detective Pickens observed a bus, which he believed originated in El Paso, Texas, arrive at the Greyhound Bus Station. (*Id.*) Detective Pickens observed a passenger (later identified as Defendant) exiting the bus who appeared to be observing a police K-9 conducting sniffs of the luggage stowed in the lower unit of the bus. (*Id.* at p. 3.) Defendant exited the bus carrying a backpack and a suitcase and walked away from the bus directly into the terminal. (*Id.*) Detective Pickens and Detective Hendershot testified that Defendant's behavior was abnormal because most passengers carry a backpack or small personal item on the bus and stow luggage in the compartment under the bus. (*Id.*) Detective Pickens also testified that most passengers lingered around the bus after exiting instead of beelining away from the bus immediately. (*Id.*) Detective Pickens testified that his attention was drawn to Defendant because it appeared Defendant was trying to distance himself from the police K-9. (*Id.*)

As Defendant entered the terminal, he appeared to notice Detective Pickens and his partner. (*Id.*) Detective Pickens testified that Defendant looked nervous. (*Id.*) Defendant then set his bags down, walked to the far end of the terminal, looked over his shoulder, and then immediately returned to retrieve his bags. (*Id.*) Detective Pickens testified that Defendant was shifting his eyes and looking around the terminal as if he was being watched or followed. (*Id.* at p. 4.) Defendant then walked towards the exit doors, near where Detective Pickens was standing. (*Id.*) Detective Pickens approached Defendant, identified himself as a police officer, asked if he could speak to

Defendant, and Defendant agreed to speak with him. (*Id.*) Detective Pickens asked where Defendant was traveling from and Defendant responded that he was coming from Denver, Colorado. (*Id.*) Detective Pickens found this response suspicious since he believed the bus Defendant had just exited originated in Texas and did not pass through Denver. (*Id.*) Detective Pickens asked to see Defendant's bus ticket; Defendant provided the ticket, which stated that his trip originated in Indio, California. (*Id.* at p. 5.) Detective Pickens testified that during this conversation, Defendant appeared visibly nervous, his hands were trembling uncontrollably, and his voice was cracking. (*Id.*)

As Detective Pickens was reviewing Defendant's ticket, Detective Pickens dropped Defendant's re-boarding pass. (*Id.*) While Detective Pickens bent down to pick up the re-boarding pass, Defendant dropped his suitcase and attempted to flee out of the front doors of the terminal, which led to Kansas City and not to any buses. (*Id.*) Detective Pickens testified that at this moment, based on the totality of the circumstances, he believed that Defendant was involved in some sort of criminal activity. (*Id.*) Detective Pickens ordered Defendant to stop, but Defendant did not comply. (*Id.*) Instead, Defendant knocked Detective Ruch into a doorframe in his attempt to get away. (*Id.*) Detective Pickens and Detective Hendershot then stopped Defendant and struggled with him on the ground for several moments. (*Id.*) One of the officers eventually placed Defendant in handcuffs. (*Id.*)

As Detective Pickens helped Defendant – who was now handcuffed – to stand up, Detective Pickens asked Defendant why he tried to flee. (*Id.*) Detective Pickens testified that he responded, "Because I have meth in my bag." (*Id.*) Defendant was then escorted to an office in the rear of the Greyhound Bus Station. (*Id.*) Detective Pickens asked to search Defendant's bag, but Defendant refused and requested a lawyer. (*Id.*) Detective Pickens then asked Detective Acton to

3

conduct a K-9 sniff check on Defendant's bags, which were placed among similar luggage in the rear of the Greyhound Bus Station. (*Id.*) The K-9 alerted to both of Defendant's bags. (*Id.*) At that point, Detective Pickens told Defendant he was under arrest and read Defendant his *Miranda* rights. (*Id.*) Defendant again requested a lawyer. (*Id.*) Detective Pickens testified that after this point, Defendant was not questioned further by any of the officers. (*Id.* at pp. 6–7.)

Detective Pickens applied for a search warrant in the Jackson County, Missouri Circuit Court. (*Id.* at p. 7.) The application included all of the facts outlined above in greater detail. (*Id.* at pp. 7–8.) Detective Pickens obtained a search warrant at approximately 1:00 p.m. on March 9, 2017. (*Id.* at 9.) After obtaining the warrant, Detective Pickens searched Defendant's bags and found two bundles of methamphetamine. (*Id.*)

Now pending is Defendant's motion to suppress (1) the statement "Because I have meth in my bag" and (2) the methamphetamine found in Defendant's bags. (Doc. 32.) The government opposes the motion. (Docs. 37, 58.) The Court resolves the parties' arguments below.

## II. DISCUSSION

Defendant argues that his rights were violated in several respects. (*See* Doc. 57, p. 7.) The Court will address each argument in turn. First, Defendant claims that the officers lacked reasonable suspicion to detain Mr. Rodriguez and that the officers profiled Defendant as a drug courier based on his ethnicity. The Court disagrees. As an initial matter, the Court agrees with Judge Counts that Detective Pickens did not need any justification to initiate a consensual conversation with Defendant. (*See* Doc. 61, pp. 12–15; *see also Fla. v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions . . ."); *United States v. Hernandez*, 854 F.2d 295, 297 (8th Cir. 1988).)

4

The Court also agrees that Defendant was not "seized" for the purposes of the Fourth Amendment until he attempted to flee and Detective Pickens ordered him to stop. (Doc. 61, pp. 10–12; *see also Hernandez*, 854 F.2d at 297 ("An initially consensual encounter is transformed into a seizure when, considering all of the circumstances, a reasonable person would believe that he is not free to leave.")) "A brief investigatory stop is permissible under the Fourth Amendment if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Montgomery*, 828 F.3d 741, 743–44 (8th Cir. 2016) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (cleaned up). "In determining whether an officer has reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)) (quotations omitted). "Additionally, officers are permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (cleaned up).

In this case, the evidence indicates that:

- Detective Pickens believed that Defendant exited a bus originating from Texas, which is a known source state for narcotics;

- Detective Pickens observed Defendant take notice of the police K-9 and attempt to distance himself from the K-9;

- Detective Pickens noticed that Defendant carried all his luggage (as opposed to storing some luggage in the lower compartment of the bus), which in his experience is typical of drug carriers and atypical of other passengers;

- Detective Pickens noticed that Defendant exited the bus and immediately entered the terminal, which was also atypical of other passengers;

- Detective Pickens observed that as Defendant entered the terminal, he appeared nervous and looked around to see if he were being followed;

- After Detective Pickens made contact with Defendant, Detective Pickens noticed that Defendant was visibly nervous, his hands were trembling uncontrollably, and his voice was cracking;

- Detective Pickens noticed that Defendant's bus ticket stated that his trip originated in Indio, California, not Denver, Colorado as Defendant claimed;

- Finally, as Detective Pickens reached down to pick up Defendant's re-boarding pass, Defendant dropped his suitcase and attempted to flee from the bus station.

In light of this evidence, the Court concludes that Detective Pickens had reasonable suspicion supported by articulable facts of suspected criminal activity which justified Defendant's stop. *See, e.g.*, *Montgomery*, 828 F.3d at 743–44. Thus, there was no constitutional violation.

Moreover, no evidence was presented (aside from Defendant's unsupported assertions) to suggest that the officers profiled Defendant as a drug courier based on his ethnicity. As Judge Counts points out, "Detectives Pickens and Hendershot each testified that the fact that Rodriguez was Hispanic did not make them suspicious of him. . . . Further, several other Hispanic persons who exited the same bus as Rodriguez did not draw the officers' attention." (Doc. 61, p. 14, n.10.)

The Court next considers Defendant's second and third arguments, which are related. Defendant contends that the officers improperly questioned Defendant after he requested an attorney and coerced him to admit that there was methamphetamine in his bag by telling him that they were obtaining a warrant and were going to search his bags regardless of whether he

6

consented. These arguments are based on Defendant's contention that he made statements to the officers after he was escorted from the terminal to a back room of the Greyhound Bus Station. However, as noted by Judge Counts, the evidence presented at the hearing does not support these facts. Instead, the evidence indicates that after the officers placed Defendant in handcuffs and helped Defendant to stand, Detective Pickens asked Defendant why he tried to flee. (Doc. 61, p. 5.) Detective Pickens testified that in response to this question Defendant stated, "Because I have meth in my bag." (*Id.*) The evidence indicates that after Defendant was escorted to the rear of the Greyhound Bus Station and he requested a lawyer, none of the officers questioned Defendant further. (*Id.* at p. 7.) No evidence supports Defendant's claim that he made statements to the officers in the back office.

Nonetheless, the Court agrees with Judge Counts that the statement "Because I have meth in my bag" should be suppressed. *Miranda* warnings are required when someone is subject to a "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). That is, a person must be *Mirandized* when he is placed in custody by law enforcement and is questioned in a way that would likely evoke an incriminating response. *See id.* The Court agrees with Judge Counts that when Defendant was tackled to the ground and placed in handcuffs, he was in custody. Further, Detective Pickens' question regarding why Defendant chose to run away amounts to a custodial interrogation since the question was likely to elicit an incriminating response. Thus, absent *Miranda* warnings, Defendant's statement must be suppressed.

Finally, the Court considers Defendant's fourth and fifth arguments together, which are also related. Defendant claims that officers searched Defendant's property without his consent and prior to obtaining a warrant and the statements in Detective Pickens' application for a search warrant were false and misleading and were made intentionally, knowingly or with reckless

7

disregard for the truth. Addressing the latter first, the Court agrees with Judge Counts that the statements in Detective Pickens' affidavit in support of the search warrant were supported by probable cause. *See, e.g.*, *Dalia v. United States*, 441 U.S. 238, 255 (1979) ("The Fourth Amendment requires that search warrants be issued only upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.") (quotations omitted.) The evidence does not support Defendant's allegation that the affidavit contained false or misleading statements, or that such action was taken intentionally, knowingly, or with reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Although the affidavit contained Defendant's statement "Because I have meth in my bag" – which the Court has determined must be suppressed – it does not follow that the evidence obtained pursuant to the warrant also be suppressed. Affidavits containing tainted information are analyzed under a redaction analysis, meaning the Court must consider the sufficiency of the affidavit after deleting the tainted information. *See United States v. Swope*, 542 F.3d 609, 614–15 (8th Cir. 2008) (citing *United States v. Hernandez Leon,* 379 F.3d 1024, 1027 (8th Cir.2004) (stating that "[t]he sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information"); *United States v. Johnston,* 876 F.2d 589, 594 (7th Cir.), *cert. denied,* 493 U.S. 953 (1989) (citing cases and stating that "[l]oads of court[s] of appeals cases" have held that a redaction analysis is the proper test for affidavits containing tainted information)). The Court agrees with Judge Counts that even without Defendant's statement, there were sufficient facts "i.e. [Defendant's] actions along with the K-9 alert to the odor of narcotics on both of [Defendant's] bags" to support a finding of probable cause that a controlled substance would be found in Defendant's bags. (Doc. 61, p. 20, n.13.)

Furthermore, the Court also agrees with Judge Counts that the subsequent search of Defendant's bags was not conducted before the warrant was issued. Detective Pickens testified that he searched Defendant's bags only after he received the search warrant. (Doc. 61, p. 18.) No evidence supports Defendant's argument to the contrary.

### III. CONCLUSION

For these reasons, the Court adopts the Report and Recommendation of Judge Counts. (Doc. 61.) Defendant's motion to suppress evidence is **GRANTED** with respect to Defendant's statement made to Detective Pickens. The remainder of the motion is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: September 25, 2019   UNITED STATES DISTRICT COURT